**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATHENA O'GARRO, Individually and on Behalf of All Others Similarly Situated,<br><br>     Plaintiff,<br><br>  v.<br><br>CITY OF JERSEY CITY, a public entity; and STEVEN FULOP, in his official capacity as Mayor,<br><br>     Defendants. | Civil Action No. _____<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Athena O'Garro, on behalf of herself and all others similarly situated, bring this action for declaratory and injunctive relief pursuant to the Americans with Disability Act (42 U.S.C. § 12131, *et seq*.), Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794, et seq.), and the New Jersey Law Against Discrimination (N.J.S.A. § 10:5-1, et seq.) against Defendants the City of Jersey City, and Mayor Steven Fulop based on personal knowledge as to herself and upon information and belief as to all other allegations, and alleges as follows:

## INTRODUCTION

1.      The City of Jersey City's ("Jersey City" or "the City") neglected sidewalks are disintegrating, crumbling, and in disrepair, making day-to-day travel difficult and hazardous for the more than 18,000 disabled residents of Jersey City.[1]

2.      Jersey City has neglected its duty to its disabled citizens for nearly three decades by failing to provide accessible pedestrian rights of way in violation of Title II of the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act ("Section 504"), and the Section 10:5-1 of the New Jersey Law Against Discrimination ("NJLAD").

3.      People with disabilities cannot travel freely within Jersey City because the pedestrian rights of way - including curb ramps, sidewalks, pedestrian crossings – are rife with barriers, hindering the rights of people with disabilities to work, study, volunteer, socialize, and fully engage in civic life.

4.      For example, a substantial number of the street crossings within Jersey City do not comply with applicable federal regulations addressing accessibility for people with mobile disabilities because they lack curb ramps entirely, have curb ramps on only one side of a corner,

---

[1] The latest U.S. Census Bureau report states 7% of Jersey City's estimated population of 265,549 identify as disabled persons. *See* U.S. Census Bureau, 2020 Census (Oct. 19, 2018), https://www.census.gov/programssurveys/ decennial-census/2020-census.html.

or have curb ramps that are too narrow, steep, cracked, broken, or uplifted to be used by people with mobile and/or visual disabilities ("mobile disabilities").

5.     These barriers make independent travel difficult or impossible for people with mobile disabilities and have caused members of the proposed class to suffer bodily injury as a result of falling out of wheelchairs and tripping over obstacles, and generally being unable to traverse streets addressed below.

6.     Meanwhile, pervasive obstructions block pedestrian rights of way for people with disabilities that affect their mobility. For example, Jersey City fails to enforce parking laws, allowing an unprecedented and extreme situation of drivers parking their cars on sidewalks and in crosswalks on a regular and reoccurring basis. Vendor sandwich boards, trash cans, and sidewalk furniture are placed in the path of travel with impunity. People who are blind or have low vision routinely run into these obstructions, and people who use wheelchairs often cannot pass without moving into the line of traffic.

7.     Defendants' decades-long disregard for its obligation under state and federal accessibility laws denies people with disabilities access to a safe, unencumbered route of travel on the sidewalks of Jersey City.

8.     These disability access laws were enacted to provide persons with disabilities an equal opportunity to participate fully in civic life. *See* 42 U.S.C. § 12101(a)(7) of the ADA; Section 504; and NJLAD § 10:5, *et. seq*. As detailed further below, the City has excluded Plaintiff and all other similarly situated individuals with mobility disabilities from participation in or denied them the benefits of the City's pedestrian right-of-way program, service, or activity, or subjected them to discrimination by: a) failing to install and remediate curb ramps (i) in newly-constructed or altered portions of the City's pedestrian right-of-way and (ii) at crossings adjacent to newly-

constructed or altered roadways; and b) failing to install, remediate, and maintain curb ramps where necessary to provide people with mobility disabilities meaningful access to (i) the City's pedestrian rights of way, when viewed in its entirety, and (ii) facilities in which the City programs, services, and activities are made available to the public.

9.      For decades, the City has failed to meet ADA, Section 504, and NJLAD accessibility requirements and to adopt and implement systematic efforts to ensure that the City's pedestrian right-of-way is readily accessible to and usable by persons with mobility disabilities. Furthermore, the City has for decades made compliance with the ADA, Section 504, and the NJLAD a lower priority than other activities and projects, including discretionary activities and projects not mandated by law. Prioritizing compliance with the ADA, Section 504, and NJLAD in this manner also constitutes a policy or practice that denies program access to and discriminates against persons with mobility disabilities. This lawsuit seeks a court order requiring the City to comply with these laws and to provide people with mobility disabilities meaningful access to the City's pedestrian right-of-way.

10.      Plaintiff, brings this action to remedy violations of Title II of the ADA, 42 U.S.C. § 12131 *et seq*., and its accompanying regulations; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq.*, and its accompanying regulations; and Section 10:5 of the New Jersey Law Against Discrimination, and its accompanying regulations.

## **JURISDICTION AND VENUE**

11.      This is an action for declaratory and injunctive relief, brought pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101 to 12213, specifically Title II of the ADA, Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794, *et seq.*, and Section 10:5 of the New

Jersey Law Against Discrimination to redress systemic civil rights violations against people with mobility disabilities by Jersey City.

12.    This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and Section 504 and supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims arising under state law.

13.    This Court has jurisdiction to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

14.    Venue over Plaintiff's claims is proper in the District of New Jersey because Defendants are located in the District of New Jersey within the meaning of 28 U.S.C. § 1391, and because the events, acts, and omissions giving rise to Plaintiff's claims occurred in the District of New Jersey.

## FACTUAL ALLEGATIONS

15.    This class action seeks to put an end to systemic civil rights violations committed by Jersey City, and Steven Fulop in his official capacity as Mayor (collectively "Defendants") against persons with mobility disabilities, which include persons whose disabilities require that they use mobility aids, such as wheelchairs, scooters, canes, walkers, or crutches, along with people with visual disabilities.

16.    The City's curb ramps, sidewalks, cross walks, pedestrian crossings and other walkways (hereafter "pedestrian rights of way") frequently contain access barriers that expose persons with mobility disabilities to many hazards, including barriers that force wheelchair users to roll in the streets alongside vehicular traffic. The City has been required for more than three decades to identify and remedy such access barriers but has failed and refused to meet this obligation. As a result, Plaintiff and other persons who have mobility disabilities must choose

between remaining segregated from significant categories of daily activities — including visiting public facilities, places of public accommodation, or friends, and accessing public transit stops — and thereby remaining safe, or risking injury or death by traveling on or around inaccessible pedestrian rights of way. The lack of access to the City's system of pedestrian rights of way deprives people who have mobility disabilities of the basic right to travel independently and prevents them from being fully integrated into community life.

17.     Plaintiff O'Garro is an individual with a mobility disability who brings this action on behalf of herself and all persons with mobility disabilities who are being discriminated against and subjected to hazardous conditions due to the access barriers in the City's pedestrian rights of way.

18.     The City's pedestrian rights of way constitute a key public program, service or activity within Defendants' jurisdiction. Defendants provide this public program, service, or activity for the benefit of residents of and visitors to Jersey City. By refusing to provide persons with mobility disabilities meaningful access to this key public program, service, or activity, Defendants discriminate against persons with disabilities in violation of federal and state law.

19.     The discrimination and denial of meaningful access to the City's pedestrian rights of way for persons who have mobility disabilities complained of herein is the direct result of Defendants' policies and practices with regard to the City's pedestrian rights of way and disability access, including, but not limited to, the following:

     a.     The failure to install curb ramps at intersections in the City that are necessary to provide meaningful access to the pedestrian rights of way;

     b.     The failure to develop and implement an adequate process for identifying intersections and corners throughout the City at which curb ramps are necessary to provide

meaningful access to the pedestrian rights of way;

c.      The failure to install accessible curb ramps at locations where no curb ramps exist, or where inaccessible curb ramps exist, within the time required by applicable state and federal disability access laws or on any other reasonable schedule;

d.      The failure to install accessible curb ramps within the time permitted by statute or within any other reasonable time frame, after receiving a request to do so or otherwise being notified or becoming aware of the need for a curb at a particular location;

e.      With respect to intersections on streets that are resurfaced or otherwise altered or newly constructed, the failure to install accessible curb ramps at those intersections;

f.      With respect to newly-constructed curb ramps, the failure to utilize or require and enforce the utilization of design standards that comply with acceptable federal design guidelines;

g.      The failure to ensure the repair or elimination of mid-block barriers to access on City pedestrian rights of way in the form of broken, cracked, crumbled, steep, sunken, uneven, caved, or otherwise inaccessible surfaces, improper slopes, or cross-slopes, as well as obstacles placed in the path of travel, such as bus stop benches, trash cans, light poles, or signage, when necessary to provide meaningful access to the pedestrian rights of way;

h.      Curb cuts which are absent or not properly positioned such that they force disabled pedestrians to travel around the corner in the street alongside vehicular traffic in order to access a crosswalk;

i.      Curb ramps that are improperly designed and/or constructed such

that they have multiple deficiencies. These deficiencies often include one or more of the following:

    i.      Slopes on curb ramps that are too steep;

    ii.      Landings at the top of curb ramps that do not provide enough space for a wheelchair to maneuver onto or off the ramp, forcing the disabled pedestrian to use the much steeper side flares or roll off the sidewalk entirely;

    iii.      Gutter pans at the bottom of curb ramps which have excessive counter slopes. The combination of excessive curb ramp slope and/or gutter pan counter slope often forces wheelchair users to scrape the paving with their foot rests and can even bring a wheelchair or scooter to a full stop, creating risks of falling and injury; and

    iv.      Lips at the bottom of curb ramps where the ramp meets the gutter. Such lips create additional risks of scraping the pavement and/or sudden stops and possible falls and injury. Federal access codes have called for smooth transitions at the base of curb ramps for several decades.

j.      The failure to adopt or implement adequate procedures for inspecting, repairing, and maintaining the pedestrian rights of way to ensure they are free from barriers to access;

k.      With respect to portions of streets that are resurfaced or otherwise altered or newly constructed, the failure to repair or eliminate mid-block barriers to access on City sidewalks and other pedestrian rights of way;

l.      The failure to adopt, implement, or enforce ordinances or other requirements necessary to ensure that pedestrian rights of way are kept free of temporary

or permanent obstructions resulting in barriers to access, such as broken, cracked, crumbled, steep, sunken, uneven, caved, or otherwise inaccessible surfaces, improper slopes or cross-slopes, as well as obstacles placed in the path of travel, such as bus stop benches, trash cans, light poles, or signage;

m.    The lack of an adequate plan, or failure to implement an adequate plan, to maintain accessible pedestrian rights of way once they are built;

n.    The lack of an adequate plan, or failure to implement an adequate plan, to provide accessible temporary pedestrian routes when the regular pedestrian routes are blocked due to construction or other activities; and

o.    The failure to establish effective means for Class Members to easily report access barriers along the pedestrian rights of way and for follow up by the City on those complaints that are reported.

20.    These policies and practices, or lack thereof, have resulted in discrimination against persons with disabilities in the form of denial of access to the City's pedestrian rights of way that manifests in common ways throughout the City. Large sections of the City's thousands of miles of pedestrian rights of way are in need of repair presently and are not accessible to persons with mobility disabilities.

21.    As a result of the above, the City's pedestrian rights of way, when viewed in their entirety, are characterized by numerous physical access barriers, including but not limited to the following:

a.    Unsafe, noncomplying (slopes too steep, hazardous cross-slopes, high curb ramp lips), or missing curb ramps;

b.    Broken pedestrian rights of way that are cracked, crumbled, steep, sunken,

or uneven, caved, or that have improper slopes or broken and inaccessible surfaces;

c.     Physical obstacles on the sidewalk between intersections, such as improperly placed signs, poles, trash cans, or bus stop benches; and

d.     Improperly designed and/or constructed pedestrian walkways that are too steep, too narrow, contain steps or other vertical changes in elevation, and other barriers that make them difficult or impossible for pedestrians with mobility disabilities to safely use.

22.    The accessibility of pedestrian rights of way goes to the heart of the purpose of the ADA and other disability rights laws that mandate full integration. Defendants provide and are responsible for maintaining these public pedestrian rights of way, which constitute an essential government program, service or activity for City residents and visitors alike. Yet, when viewed in its entirety, this system of pedestrian rights of way is not accessible to persons with mobility disabilities, in violation of multiple federal and state disability rights laws. This lawsuit seeks to force Defendants to comply with these laws, and finally, over 29 years after the enactment of the ADA and 46 years after the enactment of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, *et seq.* (the "Rehabilitation Act"), and some 75 years after this State enacted the New Jersey Law Against Discrimination, N.J.S.A. § 10:5, *et. seq.* to provide access to the City's pedestrian rights of way for all residents and visitors to the City with mobility impairments.

23.    Defendants' repeated failures to provide accessible pedestrian rights of way violate Title II of the ADA, 42 U.S.C. § 12131, *et seq.,* and its accompanying regulations, Section 504 of the Rehabilitation Act, and its accompanying regulations, as well as the NJLAD. Such failures are particularly egregious in light of the Third Circuit's decision in *Kinney v. Yerusalim*, 9 F.3d 1067, 1073 (3rd Cir. 1993), which held that Under Americans with Disabilities Act and its regulations,

"if an alteration renders a street more 'usable' to those presently using it, such increased utility must also be made fully accessible to disabled through installation of curb ramps."

24.     Plaintiff is an individual with mobility disabilities. People with such disabilities require curb ramps that are properly designed, located, constructed, and maintained so that they can use the pedestrian rights of way to travel to and from their desired destinations without being required to travel on City streets in traffic and or traverse hazardous and unsafe curb ramps. Such individuals also require that pedestrian rights of way be properly maintained so that they are free from abrupt changes in level of over ¼ inch (or ½ inch if the change in level is beveled), which are difficult if not impossible to traverse by a person with a mobility disability, and cross-slopes of more than two percent, which may cause a wheelchair or scooter to tip over sideways. Pedestrian rights of way must also be sufficiently wide to allow passage of a mobility device. Barriers such as light poles, trash cans, and other obstructions must not narrow the pedestrian right-of-way such that it is impassable for those with mobility disabilities. Finally, such individuals require that alternative accessible routes be provided during construction that results in sidewalk closures.

25.     Plaintiff thus brings this action for declaratory and injunctive relief to remedy Defendants' violations of the aforementioned federal and state statutes.

### PARTIES

26.     Named Plaintiff O'Garro is a resident of the City of New Jersey, and frequently travels throughout the City. She frequently uses a wheelchair for mobility. Plaintiff O'Garro is a "qualified person with a disability" and a person with "a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, 29 U.S.C. § 705(20)(B), and N.J.S.A. § 10:5-5. Plaintiff O'Garro has experienced and continues to experience barriers along pedestrian rights of way in Jersey City because of Defendants' ongoing

violations.

27.     The Plaintiff class consists of all persons who have mobility disabilities who use or will use pedestrian rights of way in Jersey City.

28.     References in this document to "Plaintiff" shall be deemed to include the Named Plaintiff and each member of the proposed class, unless otherwise indicated.

29.     Presently, and at all times relevant to this Complaint, Defendant Jersey City has been a public entity within the meaning of Title II of the ADA, has received federal financial assistance within the meaning of Section 504, and has received state financial assistance within the meaning of Government Code § 11135.

30.     The City is a local government entity with the responsibility of providing Plaintiff with access to its public facilities, programs, services, and activities. The City is responsible for constructing, maintaining, repairing, and regulating the system of pedestrian rights of way within the City.

31.     Steven Fulop is the Mayor of Jersey City (herein referred to as the "Mayor"). The Mayor, in his official capacity, is legally responsible for ensuring the City's compliance with federal and state law.

32.     Plaintiff is informed and believes and thereon alleges that each Defendant was the agent and employee of every other Defendant and was at all times relevant to this Complaint acting within the scope of such agency.

33.     Jersey City, and the Mayor are collectively referred to herein as "Defendants."

34.     References in this document to "Defendants" shall be deemed to include all named Defendants, unless otherwise indicated.

## CLASS ACTION ALLEGATIONS

35.    The Named Plaintiff brings this action individually, and as a class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who have mobility disabilities who use or will use pedestrian rights of way in Jersey City ("the Class" or "Class Members").

36.    Each Class Member of the proposed Class is a "qualified person with a disability" and/or a person with a "disability" pursuant to 42 U.S.C. § 12131(2), Section 504 of the Rehabilitation Act, and N.J.S.A. §§ 10:5-5, who requires a wheelchair, scooter, or other assistive device for mobility on sidewalks, ramps and similar rights of way.

37.    The persons in the Class are so numerous that the joinder of all such persons is impracticable and that the disposition of their claims in a class action rather than in individual actions will benefit the parties and the Court. The number of Class Members is at least in the thousands or tens of thousands of persons who have mobility disabilities who reside in or visit the City.

38.    The violations of the ADA, Section 504, and related federal and New Jersey state statues set forth in detail herein impact all members of the Proposed Class by denying them access to the public pedestrian rights of way in Jersey City.

39.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole. Class claims are brought for the purposes of obtaining declaratory and injunctive relief only.

40.    The claims of Named Plaintiff are typical of those of the Class in that they arise from the same course of conduct engaged in by Defendants, and the Named Plaintiff seeks the same relief as the proposed class - meaningful access to the City's pedestrian rights of way. The relief

sought herein will therefore benefit all Class Members alike.

41.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class Members, and such questions are, without limitation:

        a.      Whether Defendants are in violation of Title II of the ADA by denying to Class Members their civil rights to full and equal access to, use and enjoyment of the benefits of the City's pedestrian right-of-way program, service, or activity, as fully described in this Complaint;

        b.      Whether Defendants are in violation of Section 504 of the Rehabilitation Act by denying to Class Members their civil rights to full and equal access to, use and enjoyment of the benefits of the City's pedestrian right-of-way program, service, or activity, as fully described in this Complaint;

        c.      Whether Defendants are in violation of NJLAD, section 10:5 by denying to Class Members their civil rights to full and equal access to, use and enjoyment of the benefits of the City's pedestrian right-of-way program, service, or activity, as fully described in this Complaint;

        d.      Whether Plaintiff and the Class are entitled to Declaratory and Injunctive Relief.

42.     Named Plaintiff will fairly and adequately represent the interests of the Class. The Named Plaintiff has no interest adverse to the interests of other members of the Class and has retained counsel who are competent and experienced in litigating complex Class actions.

43.     The requirements of Rule 23 of the Federal Rules of Civil Procedure are met with regard to the proposed class in that:

        a.      The Class is so numerous that it would be impractical to bring all Class

13

members before the Court individually;

       b.      There are questions of law and fact which are common to the Class;

       c.      The Named Plaintiff's claims for declaratory and injunctive relief are typical of the claims of the Class;

       d.      The Named Plaintiff will fairly and adequately represent common class interests and is represented by counsel who are highly experienced in class actions and the disability rights issues in this case; and

       e.      Defendants have acted or refused to act on grounds generally applicable to the Class.

## FACTS APPLICABLE TO ALL CLAIMS

44.    Defendants have systematically failed, and are failing, to ensure that the City's pedestrian rights of way are accessible, in violation of federal and state law. As a result of Defendants' policies and practices with regard to the City's pedestrian rights of way and access for persons with mobility disabilities, the pedestrian rights of way are characterized by pervasive disability access problems, as described herein.

45.    To give just some examples of the barriers at issue, many pedestrian rights of way are blocked due to light poles, landscaping, tree roots, newspaper stands, trash cans and bus benches, which narrow or block the path of travel so that people who use wheelchairs, scooters, walkers and other assistive devices for mobility cannot navigate along or around them. Below is a small sampling of examples that have been identified via Google Maps[2]:

---

[2] The photographs were downloaded from ©Google Maps on March 27, and April 2, 2020. The dates on the photographs show what was depicted on ©Google Maps. Based on the best of Plaintiff's knowledge, information, and belief, the photographs in this complaint are taken from ©Google Maps and are accurate depicitions of the images represented therein.



*Google Maps*, July 2018

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|------|------|
| A | 21 New Street | Fire hydrant blocking sidewalk pathway | 40.697401°N | -74.089507°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|------|------|
| B | 438 Ege Avenue | Obstructions on sidewalk; narrow sidewalk | 40.719726°N | -74.093245°W |



*Google Maps*, July 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| C | 101 Waverly Street | Sidewalk damaged from tree roots | 40.738791°N | -74.053165°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| E | 294 6th Street | No sidewalk | 40.725647°N | -74.047278°W |

46.    Many pedestrian rights of way are overdue for maintenance, with broken, cracked,

crumbled, sunken, uneven, and/or caved concrete. Defendants have also failed to provide accessible alternative routes during construction involving the City's pedestrian rights of way. Below is a small sampling of examples that have been identified via Google Maps:



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| A | 112 Neptune Avenue | Broken and dilapidated sidewalk | 40.692657°N | -74.095021°W |



*Google Maps*, July 2018

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| E | 127 Colden St. | Sidewalk uneven and deteriorated | 40.717743°N | -74.055022°W |



Google Maps, July 2018

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| F | 426 Whiton Avenue | Dilapidated sidewalk | 40.714191°N | -74.057434°W |



*Google Maps*, July 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| F | 93 Maple St. | Dilapidated sidewalk | 40.712431°N | -74.059684°W |

47.    Defendants have also failed to routinely and properly enforce parking ordinances resulting in vehicles being parked on the City's sidewalks. Vehicles parked on the City's sidewalks and access ways creates hazardous barriers for Plaintiff and other mobility-impaired pedestrians. Below is a small sampling of examples that have been identified via Google Maps:



*Google Maps*, July 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|------|------|
| A | 147 Neptune Avenue | Vehicle parked on sidewalk | 40.693451°N | -74.096738°W |



*Google Maps*, July 2018

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|------|------|
| B | 212 Orient Avenue | Vehicles parked on sidewalks | 40.713380°N | -74.085093°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|--------|--------|
| B | 199 Roosevelt Avenue | Vehicles parked on sidewalks | 40.723428°N | -74.089327°W |



*Google Maps*, July 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|--------|--------|
| D | 50 Leonard Street | Vehicles parked on sidewalks | 40.755515°N | -74.045384°W |



*Google Maps*, October 2018

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|------------------------|--------------------------------------------|---|
| F | 7 Bidwell Avenue | Vehicle parked on sidewalk | 40.702202°N | -74.077464°W |

48.     Defendants have also failed, and are failing, to install and maintain curb ramps in violation of federal and state law. For example, many intersections in the City have no curb ramps or an inadequate number of curb ramps. Even among the intersections that do have curb ramps, many of them have curb ramps that are improperly installed and/or maintained, have lips where the sidewalk meets the street that are too steep for people who use wheelchairs, scooters, walkers, canes or other assistive devices for mobility to use, or are otherwise noncomplying (including slopes that are too steep or hazardous cross-slopes). Many other curb ramps are not maintained; they are broken, cracked, crumbled, sunken, uneven, and/or caved. Below is a small sampling of examples that have been identified via Google Maps:



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| A | 3 Sullivan Drive | Curb uneven, partially blocked | 40.700736°N | -74.099988°W |

*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| A | 61 Ocean Avenue | Missing curb cut | 40.691018°N | -74.096695°W |



*Google Maps*, July 2018

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|---------------------------------------------|---|
| A | 53 Rutgers Avenue | Missing crosswalk; vehicle blocking crosswalk | 40.699408°N | -74.089314°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|---------------------------------------------|---|
| B | 57 Bennett Street | Off-center curb ramp | 40.721050°N | -74.091674°W |



*Google Maps*, July 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| B | 113 Newkirk (North corner of Newkirk & Enos Place) | No curb ramps | 40.729647°N | -74.064029°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|---|---|---|---|---|
| C | 146 Hopkins Avenue | Missing curb ramp and crosswalk marking | 40.737276°N | -74.056815°W |



*Google Maps*, July 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|----------|----------|
| C | 20 Hopkins Avenue | Missing curb ramp and crosswalk marking | 40.734536°N | -74.051559°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|----------|----------|
| D | 120 Sherman Avenue | No curb ramp | 40.744809°N | -74.046912°W |



*Google Maps*, August 2019

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|------------------|------------------|
| F | 372 Johnston Avenue | Missing curb ramp and crosswalk markings | 40.714707°N | -74.059655°W |

49.    The systemic failures to construct and maintain in accessible condition the public pedestrian rights of way in Jersey City have caused the City's pedestrian rights of way, when viewed in their entirety, to be inaccessible to people with mobility disabilities in violation of state and federal law.

50.    Plaintiff alleges that these barriers do not arise in isolated or limited circumstances. Rather, these barriers are present throughout the City, thus denying access to persons with mobility disabilities City-wide. Persons with mobility disabilities encounter numerous obstacles to using pedestrian rights of way throughout the City.

51.    Defendants have failed, and are failing, to prepare and implement a compliant Self-Evaluation and Transition Plan relating to pedestrian rights of way facilities as required under federal regulations and New Jersey state statutes. The federal regulations of the ADA and Section 504 of the Rehabilitation Act require that public entities create a Self-Evaluation and a Transition Plan. A Self-Evaluation must include an evaluation of whether current services, policies, and

practices discriminate on the basis of disability. A Transition Plan must include, among other things, an up-to-date schedule for providing curb ramps or other sloped areas where pedestrian rights of way cross streets.

52.     Though Defendants once prepared what they identified as an initial self-evaluation and transition plan, that plan was incomplete, failing to assess and identify many barriers that deny persons with mobility impairments access to pedestrian rights of way, including, among other barriers, mid-block barriers on City sidewalks and pedestrian routes. Defendants also failed to maintain a copy of the original transition plan and, where Defendants initially identified pedestrian barriers and target dates for removal of such barriers, Defendants failed to complete the proposed barrier removal within the self-imposed schedule and failed to provide an updated plan identifying when they will complete such work. Defendants' failure to prepare and implement a compliant Self-Evaluation and a Transition Plan relating to the pedestrian right-of-way facilities in Jersey City discriminates against persons with mobility disabilities.

53.      As a result of the systemic barriers at issue, persons with mobility disabilities have regularly been denied access to the City's accommodations, public programs, services, and activities. Furthermore, these barriers discourage persons who have mobility disabilities from traveling safely or at all to many areas of the City. These barriers have also delayed travel and caused these persons to fear for their safety, as these conditions often create situations that are dangerous for persons with mobility disabilities.

### EXPERIENCES OF NAMED PLAINTIFF O'GARRO

54.     The experiences of Named Plaintiff O'Garro is representative of the nature of barriers experienced by persons with mobility disabilities in the City.

55.     Ms. O'Garro frequently uses a manual wheelchair due to her mobility disability. Ms.

O'Garro lives on 4th Street in the Jersey City and regularly and frequently travels throughout Jersey City. She has encountered numerous obstacles to using pedestrian rights of way when traveling in and around the City. For example, Ms. O'Garro has been deterred from traveling along 4th Street, where she lives, and on Tuers Avenue, where she worked. Ms. O'Garro has been and continues to be deterred from the above due to the poor condition of the sidewalks, the obstructions caused by tree roots, cracks, signs, parked cars, trash cans, trees, and faulty curb cuts. Below are a few examples in close proximity to Ms. O'Garro's residence and her workplace that have been identified via Google Maps:



*Google Maps*, July 2018 (sidewalk across the street from Ms. O'Garro's residence)

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|----------------------|---|
| E | 295 4th Street | Uneven and broken sidewalk | 40.724174°N | -74.047170°W |



*Google Maps*, July 2018 (approx. 315 feet from Ms. O'Garro's workplace)

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|----------------------|----------------------|
| E | 1 Jones Place | Storage box and planter blocking sidewalk | 40.727427°N | -74.065038°W |



*Google Maps*, July 2019 (approx..40 miles from Ms. O'Garro's workplace)

| Ward | Address | Description of Barrier | Google Maps Coordinates Longitude/Latitude | |
|------|---------|----------------------|----------------------|----------------------|
| E | 42 Newkirk Street | Uneven and broken sidewalk | 40.727931°N | -74.061395°W |

29

56.     Ms. O'Garro regularly travels in Jersey City for work and to patronize stores and restaurants. Inadequate and dangerous curb cuts, such as those on 4th Street and Tuers Avenue, interfere with her travel and are dangerous to her well-being.

57.     These experiences are typical of those experienced by persons with mobility disabilities in the City and demonstrate the inaccessibility, fear, humiliation, and isolation experience while trying to navigate the system of pedestrian rights of way in the City. Defendants have received notice of these violations of state and federal law, yet have failed to remediate the barriers that deny safe access to pedestrian rights of way to persons with mobility disabilities.

**FIRST CAUSE OF ACTION**
**Title II of the Americans with Disabilities Act**
**42 U.S.C. §12101,** *et seq.*

58.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

59.     Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

60.     At all times relevant to this action, the City is a "public entity" within the meaning of Title II of the ADA and provides a program, service, or activity to the general public.

61.     At all times relevant to this action, Plaintiff is a qualified individual with a disability within the meaning of Title II of the ADA and meets the essential eligibility requirements for the receipt of the services, programs, or activities of the City. 42 U.S.C. § 12131.

62.     Defendants are mandated to operate each program, service, or activity "so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities." 28 C.F.R.

§ 35.150; *see also* 28 C.F.R. §§ 35.149 & 35.151. Pedestrian rights of way themselves constitute a vital public program, service, or activity under Title II of the ADA. 28 C.F.R. § 35.104.

63.     The regulations implementing Title II of the ADA specifically provide that a public entity must install curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads and/or highways at any time after January 26, 1992 and must comply with Uniform Federal Accessibility Standards (UFAS) or with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG). 28 C.F.R. § 35.151.

64.     The regulations implementing Title II of the ADA provide that a public entity must maintain the features of all facilities required to be accessible by the ADA. 28 C.F.R. § 35.133. Facilities required to be accessible include roads, walks, and passageways. 28 C.F.R. §35.104.

65.     The regulations implementing Title II also provide that a public entity must provide and maintain accessibility for temporary facilities, including but not limited to, "temporary safe pedestrian passageways around a construction site." 28 C.F.R. 36 App. A 4.1.1(4).

66.     The City's pedestrian rights of way are not fully, equally, or safely accessible to Plaintiff when viewed in their entirety.

67.     The sidewalks, cross walks, and other walkways at issue constitute facilities within the meaning of ADAAG and UFAS. Plaintiff is informed and believes, and on that basis allege, that since January 26, 1992, Defendants have constructed, altered, or repaired parts of these facilities within the meaning of the ADAAG and the UFAS, and that Defendants, through their policies and practices, have failed to make such facilities readily accessible to and usable by persons with disabilities as required under federal accessibility standards and laws.

68.     Plaintiff is informed, believes and thereon alleges that Defendants and their agents and employees have failed to provide accessible alternative routes during construction through their

31

policies and practices with regard to the City's pedestrian rights of way.

69.    Plaintiff is informed, believes and thereon alleges that Defendants and their agents and employees have failed and continue to fail to maintain accessible facilities on pedestrian rights of way by failing to fix uneven and/or crumbling pavement, failing to remove protruding and/or moveable obstructions, failing to ensure a sufficiently wide path of travel, and failing to correct excessive slopes and cross-slopes, among other failures to maintain accessible facilities in violation of Title II of the ADA.

70.    Plaintiff is informed, believes and thereon alleges that Defendants and their agents and employees have violated and continue to violate Title II of the ADA by failing to timely respond to and remedy complaints about barriers involving the City's pedestrian rights of way through their policies and practices.

71.    The regulations implementing Title II of the ADA also require public entities to prepare and implement a Self-Evaluation and Transition Plan to evaluate and improve the accessibility of their facilities. Public entities that have authority over streets, roads or walkways must include in their transition plan "a schedule for providing curb ramps or other sloped areas where pedestrian walks cross curbs." 28 C.F.R. § 35.150(d)(l)-(2). Defendants have failed to provide a comprehensive transition plan with a complete and up-to-date schedule for providing sidewalk repairs, curb ramps, or other sloped areas where pedestrian walks cross curbs, and removal of pedestrian walkway barriers and obstacles.

72.    The ADA's regulations at 43 C.F.R. §117.550(a)(3) prevent public entities from refusing to comply with their obligations to provide persons with disabilities meaningful access to their programs and services by claiming that doing so would impose an undue financial or administrative burden, unless such a determination is made by an agency head or his or her

designee after consulting all agency resources available for use in the funding and operation of the conducted program or activity and the determination is accompanied by a written statement of the reasons for reaching that conclusion. On information and belief, the City, through its agency heads and/or designees, has failed to make such a determination accompanied by the required written statement and has, therefore, failed to demonstrate that providing the access Plaintiff seeks to its pedestrian rights of way would impose an undue financial or administrative burden.

73.     As a direct and proximate result of the aforementioned acts, Plaintiff has suffered, and continues to suffer, difficulty, hardship and danger, due to Defendants' failure to address accommodations, modifications, services and access required for Plaintiff's disabilities.

74.     Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

75.     Pursuant to 42 U.S.C. § 12133, Plaintiff is entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expert expenses, and costs incurred in bringing this action.

### SECOND CAUSE OF ACTION
### Section 504 of the Rehabilitation Act
### 29 U.S.C.§ *794, et seq*.

76.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

77.     Section 504 of the Rehabilitation Act of 1973 provides: "[N]o otherwise qualified individual with a disability... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance..." 29 U.S.C. § 794.

78.     Plaintiff is otherwise qualified to participate in the services, programs, or activities that are provided to individuals in Jersey City. *See* 29 U.S.C. § 794(b).

79.     The City is a direct recipient of federal financial assistance sufficient to invoke the coverage of Section 504, and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

80.     Defendants and their agents and employees have and continue to violate the Rehabilitation Act and the regulations promulgated thereunder by excluding Plaintiff from participation in, denying Plaintiff the benefits of, and subjecting Plaintiff based solely by reason of her disability to, discrimination in the benefits and services of the City's pedestrian rights of way and for the reasons set forth above.

81.     Under Section 504, a recipient of federal financial assistance must install compliant curb ramps at intersections whenever it newly constructs or alters sidewalks, streets, roads and/or highways. *Voices for Independence (VFI) v. Penn. Dept. of Trans.*, No. 06-78 Erie, 2007 WL 2905887, at *3 (W.D. Pa. Sept. 28, 2007). Defendants have additionally violated Section 504 by failing to construct compliant curb ramps at intersections throughout the City where they have newly-constructed or altered streets, roads, and/or highways.

82.     As a direct and proximate result of the aforementioned acts, Plaintiff suffered and continues to suffer humiliation, hardship, and anxiety due to Defendants' discrimination on the basis of Plaintiff's disabilities.

83.     Because Defendants' discriminatory conduct is ongoing, declaratory and injunctive relief are appropriate remedies.

84.     Pursuant to 29 U.S.C. § 794(a), Plaintiff is entitled to declaratory and injunctive relief, and to recover from Defendants the reasonable attorneys' fees and costs incurred in bringing this action.

### THIRD CAUSE OF ACTION
**Violations of the New Jersey Law Against Discrimination**
**N.J.S.A. § 10:5-1 *et seq.***

85.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

86.     At all times relevant to this action, the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5-1 *et seq.*, carries with it the full force and effect of law, and has been in full force and effect and applies to the Defendants' conduct.

87.     At all times relevant to this action, Plaintiff has been a person with a disability within the meaning of N.J.S.A. §§ 10:5-5(q).

88.     Pursuant to N.J.S.A. § 10:5-12(f)(1), it shall be unlawful discrimination "for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof... on account of... disability."

89.     N.J.S.A. § 10:5-4.1, "provides that `[a]ll persons shall have the opportunity to obtain... all the accommodations, advantages... and privileges of any place of public accommodation without discrimination on the basis of disability."

90.     Plaintiff is an aggrieved person within the meaning of N.J.S.A. § 10:5-13, which extends relief to "any person claiming to be aggrieved" by the discrimination of a person on the basis of disability.

91.     Defendants discriminated against, and continues to discriminate against, Plaintiff on the basis of disability in violation of the NJLAD, as set forth above.

92.     Absent injunctive relief there is a clear risk that Defendants' actions will recur with

Plaintiff, and therefore Plaintiff is entitled to declaratory and injunctive relief,.

93.    Plaintiff is further entitled to an award of attorney's fees, costs, and disbursements pursuant to N.J.S.A. § 10:5-27.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment as follows:

1.    Certifying the Class as a Class Action and appointing Plaintiff's attorneys as lead counsel for the Class;

2.    A declaration that Defendants' conduct as alleged herein has violated, and continues to violate, Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973 and NJLAD.

3.    An order and judgment enjoining Defendants from violating Title II of the ADA and Section 504 of the Rehabilitation Act, and requiring Defendants to undertake remedial measures to mitigate the effects of Defendants' past and ongoing failure to provide full and equal access to persons with mobility impairments to the City's pedestrian rights of way. At a minimum, Plaintiff requests that Defendants be ordered to take the following actions:

a.    Ensure that the City's pedestrian rights of way when viewed in their entirety are readily accessible to and usable by individuals with mobility disabilities;

b.    Undertake prompt remedial measures to eliminate the physical barriers to access to pedestrian rights of way to make such rights of way accessible to Plaintiff in accordance with federal and state nondiscrimination statutes;

c.    Ensure that all future new construction and alterations to City pedestrian rights of way comply with the Americans with Disabilities Act Accessibility Guidelines and/or Uniform Federal Accessibility Standards; and

36

    d.    Remain under this Court's jurisdiction until Defendants fully comply with the Orders of this Court.

3.    Award Plaintiff's attorneys' fees, expert expenses, and costs, as provided by law; and

4.    Such other relief as the Court finds just and proper

Dated: April 29, 2020

Respectfully Submitted,

*/s/Lee Albert*
Lee Albert (LA-8307)
GLANCY PRONGAY & MURRAY LLP
230 Park Avenue, Suite. 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lalbert@glancylaw.com

Erik H. Langeland (*pro hac vice* to be filed)
ERIK H. LANGELAND, P.C.
733 Third Avenue, 16th Floor
New York, N.Y. 10017
Telephone: (212) 354-6270
elangeland@langelandlaw.com

Jon A. Tostrud (*pro hac vice* to be filed)
Anthony M. Carter (*pro hac vice* to be filed)
TOSTRUD LAW GROUP, P.C.
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com