**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

ATHENA O'GARRO, Individually and On Behalf of All Other Similarly Situated Individuals,

*Plaintiff,*

v.

CITY OF JERSEY CITY and STEVEN FULOP,

*Defendants.*

Civil Action No. 2:20-cv-05282-CCC-JBC

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR: (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF THE NOTICE OF SETTLEMENT**

**Hon. Claire C. Cecchi**
**Motion Day: July 15, 2014**

## I. INTRODUCTION

This class action lawsuit arises out of allegations concerning the compliance of the defendant City of Jersey City's ("Jersey City" or the "City") pedestrian facilities with federal accessibility laws. Plaintiffs Athena O'Garro and Twyanna Caldwell (collectively, "Named Plaintiffs"[1] or "Plaintiffs") alleged that the City's pedestrian facilities contained barriers resulting in non-compliance in violation of Title II of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Violations of the New Jersey Law Against Discrimination. Defendants Jersey City and Mayor Steven Fulop (collectively "Defendants") have and continue to deny Plaintiffs' allegations and to dispute that it has any liability or has committed any wrongdoing. Approximately two-and-a-half years after first engaging in mediation, Plaintiffs and Defendants (collectively the "Parties") reached a settlement agreement (the "Settlement"), submitted herewith as Exhibit 1 and 1A (the "Release)" to the Declaration of Lee Albert in Support of the Motion for Preliminary Approval of Settlement (hereinafter "Albert Decl."). The Settlement will achieve

[1] Ms. Caldwell is named as a plaintiff in the Second Amended Complaint [ECF73].

substantial long-term improvements to the City's pedestrian infrastructure through the installation and upgrade of curb ramps throughout Jersey City, enhancing access to jobs, schools, and community life for individuals with disabilities that affect their mobility. This Settlement was approved by City of New Jersey Council on May 22, 2024. (Exhibit 2 to Albert Decl.).

For the reasons set forth below, the Settlement, which is the product of a robust, arm's length negotiations and thorough litigation over more than three years, is fair, reasonable, and adequate, and merits preliminary approval. The Parties therefore jointly request that this Court:

(1) grant preliminary approval of the Agreement;

(2) certify the Settlement Class;

(3) approve the notice to be provided and the method for provision of such notice; and

(4) issue an order setting deadlines for objections and scheduling a Fairness Hearing.

## II. STATEMENT OF FACTS

### A. History of the Litigation

After significant research and analysis, the complaint in this action was filed on April 29, 2020 [ECF1]. Defendants answered the complaint on August 7, 2020 [ECF17].

The parties then began to conduct discovery in earnest. The Pretrial Scheduling Order was filed on October 29, 2020 [ECF22], and the Protective Order was filed on December 4, 2020 [ECF 23].

On October 19, 2020, Plaintiff propounded document requests and interrogatories to Defendants. Defendants responded on January 21, 2021.

Similarly, on November 20, 2020, Defendants propounded document requests and interrogatories to Plaintiff. Plaintiff responded on January 21, 2021.

On February 22, 2021, the parties had a telephone status conference before Magistrate Judge James B. Clark.

On February 24, 2021, the Court ordered Plaintiff to provide more specificity with respect to her answers to written discovery concerning those places in the city currently known to Plaintiff that were not ADA compliant or otherwise suited to use by disabled persons, and to certify her answers. The Court then scheduled a telephone status conference with the parties on May 19, 2021 and Ordered that, prior to the call, the Parties shall exchange settlement positions. [ECF29].

Starting in March 2021, Plaintiffs' Counsel retained Carl Peters, an expert in the areas of Land Use, Municipal Engineering and Code Enforcement in the State of New Jersey. Mr. Peters was retained to, and did, survey a sampling of Jersey City streets to identify ADA non-compliance with curb cuts and sidewalks.

On May 12, 2021, Plaintiff submitted a detailed, comprehensive settlement demand to Defendants.

On May 17, 2021, Plaintiff filed a letter concerning Plaintiff's discovery responses, Defendants' production of ESI, Plaintiff's intention to take a Rule 30(b)(6) deposition, and noting that Plaintiff had submitted a detailed, comprehensive settlement demand to Defendants on May 12, 2021. Plaintiff also told the Court that Defendants informed Plaintiff on May 10, 2021 of their intent to seek permission to extend the discovery deadline currently set for July 31, 2021; and which was unopposed. [ECF30].

On May 17, 2021, the Court ordered the Parties to submit a joint letter outlining all remaining discovery disputes along with their respective positions by June 10, 2021. [[ECF32].

On June 17, 2021, after exchanging multiple drafts, the Parties filed their joint letter outlining all remaining discovery disputes along with their respective positions. [ECF35].

On July 9, 2021, the Court issued an order appointing mediator Sheryl M. Goski and staying discovery pending further order of the Court. [ECF38].

Plaintiffs' Counsel, along with Plaintiffs' Counsel's expert Carl Peters, Defendants' Counsel, two of Jersey City employees, and Ms. Goski met in Jersey City, on August 19, 2021 visited various locations around Jersey City, where Mr. Peters identified ADA non-complaint sidewalks and curb cuts.

Between October 2021 and January 2023, the parties had twelve settlement conferences before Ms. Goski. Plaintiffs' Counsel had many more communications with her, both by Zoom and by email, between July 2021 and August 2023.

Between October 2021 and January 2023 the parties attended 12 mediations sessions before Ms. Goski, and well as having many more communications both by Zoom and by email, between July 2021 and August 2023.

On August 23, 2022, January 25, June 20, and August 10, 2023, the parties had continuous telephone status conferences before Magistrate Judge James B. Clark.

On August 14, 2023, the Court issued an Order directing Defendants to present the proposed underlying substantive settlement of Plaintiff's claims to the appropriate City decisionmakers for approval prior to September 30, 2023. [ECF58].

On November 1, 2023, the parties had a telephone status conference before Magistrate Judge James B. Clark, and on March 25, 2024, the parties had a settlement conference before Magistrate Judge James B. Clark.

On June 20, 2014, pursuant to the agreement by the parties, Twyanna Caldwell was added as a Class Plaintiff in the case. [ECF 73].

**B. The Settlement Agreement**

Procedurally, this settlement follows an arm's-length mediation before a highly experienced mediator, is the result of the mediator's recommendation, and was negotiated by counsel who possessed a thorough understanding of the strengths and weaknesses of the case based on a hard and long fought litigation and mediation. The relief obtained by the Settlement will immediately impact the lives of Settlement Class members, who will be able to use thousands of newly installed and upgraded curb ramps within the term of the Settlement period. Settlement, Section A; Albert Decl., Exh. 1. Importantly, the City will be able to identify all street corners which the City owns and controls, and install ramps as required by the 2010 ADA standards. *Id.* Settlement Class members will also be able to submit requests for Jersey City to promptly address

issues with curb ramps they encounter. *Id.,* Section B. This work will enable persons with mobility challenges to increase access to jobs, healthcare, education, and community life. The Agreement will become effective on the date that the Court issues final approval and will remain in effect for up to 20 years (the "Settlement Period"). *Id.*, Section C.8. Over the Settlement Period, Jersey City will Install or Remediate at least 200 curb ramps per year (the "Curb Ramp Obligation"). *Id.* Section B.3.

Subject to limited exceptions, Jersey City will meet its obligations to the Settlement through a several-step process.

Within 90 days following receipt of the Survey results, Jersey City will then propose a schedule and deadlines for the above recommended installations and remediation to all missing or ADA non-compliant ramps identified by the Survey, which will identify corners that need Pedestrian Ramp installation or upgrades as required by the Accessibility laws, including prioritization criteria and methodology of Pedestrian Ramp installation of upgrades at standard corners or complex corners ("Implementation Plan"). Jersey City shall present its proposed schedule and deadlines to Plaintiffs' Counsel for review. Jersey City will give good faith consideration to the comments provided by Plaintiffs' Counsel to the initial schedule but will not be bound by them.

To the extent known, the Implementation Plan, which may be supplemented and amended, shall take into account locations of planned new construction or alterations that trigger the obligation to install new accessible curb ramps or which are to be remediated as part of any future resurfacing project scheduled through funding by and studies conducted by North Jersey Transportation Planning Authority and/or any other governmental entity. However, nothing herein shall prevent the City from giving priority for curb ramp installations in immediate proximity to

the following areas in the following order: 1) local government offices, 2) transportation facilities, 3) places of public accommodation, 4) employers, and 5) all other real property owned by Jersey City as shown on the City's Property Tax Map.

Implementation Phase: If the Survey shows that the total number of ramps that need to be installed or corrected is 4,000 or less, then Jersey City will install or correct a minimum of 200 Pedestrian Ramps per year. If the Survey shows that the total number of ramps that need to be installed or corrected is greater than 4,000, then Jersey City will install or correct a minimum of five percent per year of the total number of non-compliant curb ramps recommended to be installed or corrected per the Survey. Said annual commitment may be fulfilled at any location through use of third parties, as part of a planned sidewalk alteration or street resurfacing project, and/or in response to complaints from residents on "See Click Fix", a widely used app and platform that allows residents to report various non-emergency quality-of-life concerns to the city, including problems with curb ramps and sidewalks.

Simultaneous with the activities above, whenever the City (or any third-party acting with the City's authority and/or on the City's behalf) alters the City's Pedestrian Ramps, roadways, highways, and crossings, it will continue to upgrade existing but non-Compliant Curb Ramps and/or install new Accessible Curb Ramps, where feasible, and as required by 28 C.F.R. § 35.151(b) and the Third Circuit's holding in *Kinney v. Yerusalim*, 9 F.3d 1067 (3d Cir. 1993). These upgrades will be counted towards the City's yearly commitment above.

Requests to address a non-compliant curb ramp outside of the Implementation Plan crafted by Jersey City will be appropriately considered as they are made. Such requests may be made by calling the Resident Response Center or sending a complaint to "See Click Fix." The City will use

its best efforts to resolve such complaints. Any upgrades made to a non-compliant curb ramp in accordance with the ADA's design guidelines and outside of the schedule set forth in the Implementation Plan shall be counted towards the City's yearly commitment above.

The City's Implementation Plan for the schedule of installation or repair of Pedestrian Ramps above may be supplemented and amended and shall be updated and reflected on its website as work is completed annually. In each year, the City will use best efforts to adhere to the schedule but it may make changes based on field conditions, requests submitted through Curb Ramp Request System, or other operational necessity.

The Parties intend the Agreement to resolve this dispute. The operative Release language is:

> To avoid the cost, expense and uncertainty of protracted litigation and preclude any similar lawsuits or challenges during the City's compliance with and implementation of the Settlement Agreement ("Compliance Period"), Plaintiff and all members of the Settlement Class as defined in the Notice to the Class annexed hereto as an Exhibit, and their respective heirs, assigns, successors, executors, administrators, agents and representatives, in consideration of the relief set forth herein, the sufficiency of which is expressly acknowledged, do fully and finally release, acquit and discharge and dismiss with prejudice the City (its officials, agents, representatives, employees, and assigns) and Mayor Steven Fulop, from any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether asserted as individual claims, as claims on a class basis, or on behalf of the general public, whether known or unknown, suspected or unsuspected, actual or contingent, accrued or unaccrued, for damages, for injunctive or declaratory relief, however described, or for other monetary and non-monetary relief, that were brought, could have been brought by way of amendment, or brought in the future by the plaintiff and the settlement class under any accessibility laws, from the beginning of any applicable limitations period under the ADA, or under any analogous anti-discrimination statute, INCLUDING BUT NOT LIMITED TO STATUTORY ATTORNEY FEES [as agreed upon herein and upon being approved by the Court as reasonable], and that in any way relate to or arise from any of the City's or Defendants' alleged actions, omissions, incidents, or conduct related

to the accessibility by any person with a mobility disability of all of the city's pedestrian curb ramps, including but not limited to any alleged denial of access to, exclusion from participation in, or denial of the benefits of pedestrian access where pedestrian walkways meet and/or cross curbs throughout the entire compliance period.

This Release shall be effective upon final approval of this Final Settlement by the district court and be binding on the Parties from the beginning of any applicable limitations period under the ADA, or under any analogous anti-discrimination statute and until the end of the City's compliance period. This Release will not apply to claims based on accessibility barriers to and/or in the City's pedestrian ramps that remain in or come into existence after the end of the compliance period. Moreover, the release will not apply to any timely made individual notice of claim by any member of the approved Class herein for negligence, personal injury and monetary damages related to signs, midblock barriers, broken, cracked, crumbled, sunken, uneven and/or caved concrete sidewalks, or parking on or around City sidewalks. Nor does this release include any future claims to enforce the terms of this Settlement Agreement.

Exhibit 1A

If Plaintiffs' Counsel believes that the City is violating, or failing to perform, any terms of the Agreement herein following final approval of the Settlement by the Court, it will notify the City in writing and describe the alleged violation or failure to perform with particularity within thirty (30) days of the submission of the City's annual report. Such notice shall be sent to both (a) the City's Corporation Counsel, and (b) the City Clerk. The City shall provide a written response within thirty (30) business days of receipt of Plaintiffs' Counsel's notice by email. The City shall have a period of sixty (60) business days from the date it responds to Plaintiffs' Counsel's notice to cure the alleged violation or failure to perform or other deficiency. In the event that the alleged violation cannot be cured within 60 business days, the parties shall meet and confer, to attempt to agree on an appropriate period of time required to cure or otherwise resolve the alleged violation of failure to perform. If the parties are not able to resolve the dispute, either Party may file a motion with the District Court to enforce or seek relief from a provision of the Settlement Agreement, in

order to resolve the Conflict. The prevailing party reserves its right to seek reasonable attorneys' fees incurred in making or defending such a motion to enforce or seek relief under the final settlement agreement, and the Court shall have final discretion with respect to any award of attorneys' fees or expenses.

While the Parties have agreed to service awards for the named plaintiffs and monitoring fees, the Plaintiffs' counsel will petition the court for at the time of final approval of the Settlement for its fees and expenses.

## III. LEGAL ARGUMENT

### A. The Settlement Class Should be Certified for the Purpose of Settlement

In granting preliminary settlement approval, the Court should also certify the Settlement Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Courts have long acknowledged the propriety of a settlement class. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *see also Pozzi v. Smith,* 952 F.Supp. 218, 221 (E.D. Pa. 1997) ("The Third Circuit has declared that class actions created for the purpose of settlement are recognized under the general scheme of Federal Rule of Civil Procedure 23, provided that the class meets the certification requirements under the Rule."). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b), although the manageability concerns of Rule 23(b)(3) are not at issue. *See Amchem,* 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested[.]"). As demonstrated below, certification of the Settlement Class for purposes of the Settlement is appropriate because the proposed Settlement Class satisfies all the requirements of Rule 23(a) and Rule 23(b)(3).

Plaintiffs have detailed how they have met the standards of Rule 23 in their Class Certification briefing, but it is briefly discussed below:

**1. Rule 23(a)(1): The Settlement Class Is Sufficiently Numerous**

There is no number necessary to satisfy the numerosity requirement and the court may use common sense assumptions to support a finding of numerosity. *Kerrigan v. Phila. Bd. of Election*, 248 F.R.D. 470, 473–74 (E.D. Pa. 2008). Where the class numbers in the thousands, common sense dictates that the numerosity requirement has been satisfied. *Id*. at 474 (finding that plaintiffs' "good faith estimate" of the size of the class at nearly 3,000 individuals satisfied the numerosity requirement).

"[S]tatistics tending to show that joinder would be impracticable may be sufficient to satisfy Rule 23(a)(1)." *Anderson v. Pa. Dep't of Pub. Welfare*, 1 F.Supp.2d 456, 461, 468 (E.D. Pa. 1998) (relying on nationwide census bureau statistics to extrapolate the approximate size of the proposed class of individuals with mobility and vision impairments in southeastern Pennsylvania and granting class certification); Taylor v. White, 132 F.R.D. 636, 646–47, 649 (E.D. Pa. 1990) (rejecting defendants' argument that statistical evidence is insufficient and granting class certification).

Here, numerosity may be inferred. Jersey City has approximately 292,000 residents. This number can be estimated from 2020 Census data. Accordingly, the numerosity requirement is met easily.

**2. Rule 23(a)(2): Questions of Law and Fact Are Common to the Settlement Class**

Commonality does not require an identity of claims or facts among class members but will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Kerrigan*, 248 F.R.D. at 474. The instant case is a quintessential civil rights

class action alleging systemic discrimination: Plaintiffs' claims rest upon a core set of failed policies and procedures that result in an overall failure to ensure the accessibility of Jersey City's pedestrian rights of way program. Here, Plaintiffs' claims give rise to numerous questions of law and fact, the answers to which will be applicable to the class as a whole, including:

(1) Whether the City has failed to provide meaningful access to Jersey City's pedestrian right of way program to persons with impairments that impact mobility in violation of Title II of the ADA and Section 504; and

(2) Whether Defendant's system-wide policies have resulted in its failure to provide compliant, accessible curb ramps whenever Defendant resurfaces or alters streets.

These common questions of law and fact depend on common contentions, which are not affected by the circumstances of any individual class member. Such questions are therefore capable of generating common answers and thus are appropriate for class-wide resolution. *Baby Neal v. Casey*, 43 F.3d 48, 56–57 (3d Cir 1994). Furthermore, Rule 23(b)(2) classes such as this, which seek injunctive relief, often by their very nature present common questions satisfying Rule 23(a)(2). *Kerrigan*, 248 F.R.D. at 474.

**3. Rule 23(a)(3): Plaintiffs' Claims Are Typical Of The Class's Claims**

Plaintiffs satisfy Rule 23(a)(3)'s typicality requirement because Plaintiffs' claims are "typical" of the proposed Settlement Class's claims. Fed. R. Civ. P. 23(a)(3). "Factual differences will not render a claim atypical if the plaintiffs' and class members' claims arise from the same practice or course of conduct and are based on the same legal theory. *Baby Neal*, 43 F.3d at 58.

Here, Plaintiffs' claims and those of the class arise from the same policies, procedures, and practices of the City and are based on the same legal theory. Similar to members of the proposed class, Named Plaintiffs either have disabilities that affect their mobility, or represent individuals

with such disabilities.

Named Plaintiffs also seek the same declaratory and injunctive relief on behalf of the whole class. Because the Named Plaintiffs seek the same relief, rely on the same legal theories, and experienced the same injuries as the rest of the class, their claims are typical of the class, and the typicality requirement of Rule 23(a)(3) has been satisfied.

**4. Rule 23(a)(4): Plaintiffs and Their Counsel Are Adequate**

Federal Rule of Civil Procedure 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." To assess adequacy of representation, the court determines (a) whether the plaintiffs' interests conflict with those of the class, and (b) whether the plaintiffs' attorneys are capable of representing the class. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 185 (3d Cir. 2001).

Here, Named Plaintiffs will adequately protect the interests of the class because they are each long-time members of the local community, are deeply committed to improving access for persons with disabilities, and do not have any conflicts of interest with class members. Moreover, there is no conflict between the interests of the Named Plaintiffs and those of the other members of the class since they all seek the same relief—an injunction to require Jersey City to take the affirmative steps necessary to ensure that its pedestrian rights of way program, when viewed in its entirety, is accessible and usable by persons with disabilities that affect their mobility.

Finally, Plaintiffs further satisfy adequacy through their retention of qualified and capable legal counsel. *Res. Am.*, 202 F.R.D. at 187. Glancy Prongay & Murray LLP, Tostrud Law Group PC, and the Law Offices of Erik H. Langeland have successfully prosecuted numerous class actions and are staffed with highly competent attorneys. Accordingly, the adequacy requirement is met. *See* Albert Decl., ¶¶ 36-38.

**5. Rule 23(b)(2)'s Requirements Are Satisfied**

The proposed class also meets the requirements of Rule 23(b)(2) because the City "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) "was designed specifically for civil rights cases seeking broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." *Baby Neal*, 43 F.3d at 59 (internal quotation marks omitted). The requirements of Rule 23(b)(2) are "almost automatically satisfied in actions primarily seeking injunctive relief." *Id*. at 58.

Plaintiffs' Complaint seeks class-wide injunctive relief to remedy the City's discrimination against individuals with disabilities affecting mobility and certification is appropriate pursuant to Rule 23(b)(2). The claims brought in this case are precisely the type of claims that Rule 23(b)(2) was intended to cover. Here, Plaintiffs seek broad declaratory and injunctive relief—remediation, ongoing maintenance, and system-wide improvements in the City's pedestrian rights of way program—on behalf of a class of all persons with disabilities or impairments that affect their mobility and who use or will use pedestrian rights of way in Jersey City. Additionally, the Proposed Class seeks only class-wide injunctive relief to address the alleged deficiencies and does not seek any damages. Therefore, certification of the proposed class under Rule 23(b)(2) is proper. Additionally, because the claims of all class members are tied to the City's affirmative, program-wide obligations to improve the accessibility of its pedestrian rights of way, a failure to certify the class would result in duplicative claims and attendant risk of inconsistent judgments.

**B. Preliminary Approval of the Settlement Agreement is Proper**

Before granting preliminary approval of a settlement of a class action, a court must make a finding that the settlement at issue is "fair, reasonable, and adequate." *Halley v. Honeywell Int'l,*

*Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998)); *see also* Fed. R. Civ. P. 23(e)(2). The decision to approve a settlement agreement is "left to the sound discretion of the district court." *Halley*, 861 F.3d at 488 (quoting *In re Prudential*, 148 F.3d at 299). Here, the Agreement is fair, reasonable, and adequate because it satisfies the considerations outlined in Federal Rule of Civil Procedure 23(e)(2) as well as the additional factors used by courts in this Circuit to assess class action settlements.

**1. The Agreement Satisfies Rule 23(e)(2)**

Federal Rule of Civil Procedure 23(e)(2) requires the Court to consider the following factors to determine whether a proposed class settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). When considering preliminary approval of a settlement agreement, the Court must find that it "will *likely* be able to [] approve the proposal under Rule 23(e)(2)." *Id. at* 23(e)(1)(B) (emphasis added).

"These [Rule 23(e)(2)] factors are in many respects a codification of various factors set forth in *Girsh* [*v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)], which the Third Circuit has directed courts to use in establishing the fairness of a class action settlement." *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 343, 355 (E.D. Pa. 2021). However, when these factors were added to Rule 23 in 2018, the Advisory Committee noted that "[t]he goal of this amendment is not to displace any factor [outlined by a Circuit Court], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)(2), advisory committee's note (Dec. 1, 2018). Accordingly, the Parties focus first on the Rule 23(e)(2) factors, all of which support preliminary approval.

**a. The Class Representatives and Class Counsel Competently Represented the Class. Fed R. Civ. P. 23(e)(2)(A).**

This factor addresses "the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23(e)(2), advisory committee's note (Dec. 1, 2018). Class Counsel and the class representatives were thus able to fully evaluate the strengths and weaknesses of the claims and defenses before reaching the proposed settlement agreement presented to the Court today. The parties exchanged document discovery, and Plaintiffs' counsel retained Carl Peters, an expert in ADA remediation, to, among other things (1) conduct a survey of Jersey City and identify many non-compliant curb ramps and (2) identify how such curb ramps could be made compliant. Class counsel researched, analyzed, and vetted all defenses raised by Defendants in the mediation, which lasted years.

Class Counsel are also prepared to provide notice to the Settlement Class in accordance with the Notice of Proposed Settlement of Class Action Lawsuit, Exhibit 6 to Albert Decl. (hereinafter "Notice of Settlement") and monitor the Agreement over the multi- year Settlement Period. Settlement Agreement, Section C.8.b.. Thus, this factor supports preliminary approval.

**b. The Agreement was Negotiated at Arm's Length Over the Course of This Multi-Year Litigation. Fed. R. Civ. P. 23(e)(2)(B).**

As outlined above, the settlement process was extensive, involved, and conducted at arm's length from the very beginning of this case in 2019. Over the course of two-and-a-half years, the Parties engaged in multiple rounds of settlement negotiations both with the assistance of mediator Sheryl Goski, Magistrate Judge Clark, and independently.

The settlement negotiations included at least twelve settlement conferences before mediator Sheryl Goski between October 2021 and January 2023, and well as many more communications with her, both by Zoom and by email, between July 2021 and August 2023. Many issues were heavily contested, and the resulting compromises are based on careful deliberation by the Parties. The arm's length nature of the negotiations is further evidenced by the fact that the Parties have agreed to this Settlement without an agreement to attorneys' fees. Accordingly, the second Rule 23(e)(2) factor also supports preliminary approval.

**c. The Relief Provided for the Class is Robust. Fed. R. Civ. P. 23(e)(2)(C).**

This factor in part balances the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e)(2), advisory committee's note (Dec. 1, 2018). The Agreement will achieve improvements to curb ramps throughout Jersey City that will ensure those curb ramps are in accordance with the ADA's standards. The City will Install, Remediate, and Maintain curb ramps over which it has responsibility as required by 28 C.F.R. §§ 35.151 and 35.133. The City has passed a resolution that requires a survey to be conducted to identify which Pedestrian Ramps in Jersey City need to be fixed and also to identify which locations need Pedestrian Ramps to be installed.

By settling now, the Settlement Class will be able to go about their daily lives in a safer manner much sooner than if they had to wait until the conclusion of the litigation and potential

appeal. Settlement further provides finality to the City and avoids the costs and uncertainty of future litigation, while simultaneously improving the pedestrian access for residents and visitors. The Parties have weighed the benefits of the Agreement against the risks of proceeding to trial, the costs of the trial and potential appeal, as well as the delay associated with waiting until after trial and appeal for the Settlement Class to obtain relief, or for the City to fully resolve this matter. Albert Decl., ¶ 8. In assessing the risks and benefits of settlement, the Parties were informed by a fully developed case, including extensive discovery and an iterative mediation process that explored virtually all legal issues likely to arise at trial. Ultimately, although the Agreement represents a compromise between the Parties and each side contends that it would have likely prevailed at trial, they also acknowledge the time and risks associated with and inherent in any litigation, and that the Agreement will provide substantial benefits to the Settlement Class while avoiding those delays and risks.

**d. The Proposal Treats All Class Members Equitably. Fed. R. Civ. P. 23(e)(2)(D).**

As a Rule 23(b)(2) settlement, the Agreement provides only for injunctive relief, a service award to the named plaintiffs, and future monitoring costs. This factor thus also weighs in favor of preliminary approval.

**2. The Traditional Third Circuit Factors for Approval of a Class Settlement Agreement Are Also Met**

"When the Rules Committee amended Rule 23(e), the Committee did not intend to override traditional factors to assess fairness in a class settlement." *Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019). The non-exhaustive *Girsh* factors traditionally used by courts in the Third Circuit to assess whether to approve a class action settlement include:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Halley*, 861 F.3d at 488 (citing *Girsh*, 521 F.2d at 157). A settlement is deemed reasonable so long as a majority of the *Girsh* factors weigh in favor of settlement. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 243 (3d Cir. 2001). Here, analysis of the relevant *Girsh* factors weighs strongly in favor of approving the Agreement.

**a. The Settlement Provides Substantial Benefits to the Class While Avoiding Unnecessary Litigation and Undue Delay (*Girsh* factors 1, 4 and 5)**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued litigation." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535–36 (3d Cir. 2004) (internal quotations omitted). The fourth and fifth factors taken together weigh the risks of establishing liability and damages, "survey the possible risks of litigation in order to balance the likelihood of success and the potential . . . award if the case were taken to trial against the benefits of an immediate settlement." *In re Prudential*, 148 F.3d at 319.

Class Counsel have weighed the benefits of the proposed class settlement against the risks of proceeding to trial, the costs of trial and potential appeal, and the delay for the Settlement Class to obtain relief that would result from proceeding to trial even if successful. Class Counsel have discussed these factors with Named Plaintiffs. Class Counsel believes Plaintiffs would likely have prevailed at trial, but there are risks inherent in any litigation and, even if successful, any relief awarded to the Settlement Class after trial (and potential appeal) would have been significantly delayed. Albert Decl., ¶¶ 8-9.

The substantial benefits of settling this case now, while avoiding unnecessary litigation and undue delay, show that *Girsh* factors 1, 4 and 5 weigh in favor of settlement.

**b. The Class Representatives Support the Settlement (*Girsh* factor 2*)***

Notice has not begun, so the Agreement has not yet been shared with Settlement Class Members. However, the Named Plaintiffs, as evidenced by declarations appended to this motion, support the Agreement. **Exhibits 7 and 8** to Albert Decl. for of Declarations of O'Garro and Caldwell. Furthermore, in addition to their enthusiasm for more accessible curb ramps, two of the individual Named Plaintiffs who use mobility aids highlighted their appreciation for the monitoring component of the settlement. At the preliminary approval stage, this positive reaction by the Named Plaintiffs to the Agreement is sufficient to show that the second *Girsh* factor will likely be satisfied.

**c. The Case was Well-Developed at the Time of Settlement (*Girsh* factor 3)**

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235 (quoting *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 813 (3d Cir.1995)). At the time of the settlement, the parties had exchanged written discovery, and plaintiffs had retained an expert, Carl Peters, an expert in ADA remediation, to, among other things (1) conduct a survey of Jersey City and identify many non-compliant curb ramps and (2) identify how such curb ramps could be made compliant. For these reasons, the third *Girsh* factor weighs in favor of settlement.

**d. The Risk of Maintaining a Class Through Trial is Neutral (*Girsh* factor 6)**

Because "there is no apparent reason why the Court would decertify or modify the class at any time during the litigation . . . the sixth *Girsh* factor is neutral." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 313 (E.D. Pa. 2012).

***

When considered together, the relevant *Girsh* and Rule 23(e)(2) factors support preliminary approval of the Agreement. Because the proposed class action settlement is fundamentally "fair, adequate, and reasonable," the Court should preliminarily approve the Agreement through entry of the Proposed Order Granting Motion for Preliminary Approval of Class Settlement Certifying Settlement Class; Directing Issuance of Settlement Notice; and Scheduling Hearing on Final Approval

Plaintiffs respectfully requests that the Court appoint Tostrud Law Group, P.C, Law Office of Erik H Langeland, and Glancy Prongay & Murray LLP ("GPM") to serve as Class Counsel for the Settlement Class. *See* Fed. R. Civ. P. 23(g)(1) ("Unless a statute provides otherwise, a court that certifies a class must appoint class counsel."). The three firms have extensive experience and expertise litigating complex class actions throughout the United States, and are qualified and able to conduct this litigation. *See* Albert Decl. **Exhibits 3, 4, and 5** (for the three firms résumés). Plaintiffs are adequate representatives of the Settlement Class, and their counsel GPM are qualified, experienced and capable of prosecuting this Action.

**C. The Court Should Direct Distribution of the Notice of Settlement and Schedule a Fairness Hearing**

"The court must direct notice in a reasonable manner to all class members who would be bound by the proposal" if the parties have shown the court will likely be able to "approve the proposal under Rule 23(e)(2); and [] certify the class for purposes of judgment on the proposal."

Fed. R. Civ. P. 23(e)(1)(B)(i) & (ii). As outlined above, this Court has already certified an identical class and the Agreement satisfies the factors outlined in Rule 23(e)(2) as well as the traditional Third Circuit *Girsh* factors. Accordingly, the Parties respectfully request that the Court direct the distribution of notice and schedule a fairness hearing.

Actions under Rule 23(b)(2), like this one, have no strict notice requirements, leaving the form and method of notice to the court's discretion. *See* Fed. R. Civ. P. 23(c)(2)(A). A class settlement notice must provide the proposed terms for payment of attorneys' fees and costs and be distributed to the class "in a reasonable manner." *Id.* at Fed. R. Civ. P. 23(h)(1). Here, the form of notice and method of distribution have been agreed to by the Parties and are reasonable.

The notice allows any Settlement Class member to object to the terms of the proposed settlement by either: (1) appearing at the Court's Final Approval Hearing and speaking to the Court about your objection; or (2) filing a written objection with the District Court and serving Class Counsel with a copy.

Written objections should include the following information: name, address, and, if available, telephone number and e-mail address; if being represented by counsel, the name, address, telephone number and e-mail address of the attorney; (b) a statement of objections; and (c) a statement of whether the objector is a member of the Settlement Class.

All written objections need to be filed or postmarked on or before _________. A copy of any written objection filed with the Court must be sent to at least one of the Class Counsel.

The objector may but is not required to appear at the Final Approval Hearing scheduled for ____ at ______. in Courtroom 5B of the Honorable Claire C. Cecchi, United States District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street, Newark, NJ 07102, to have their objection heard by the Court.

Any Class Member who does not object at or before the Final Approval Hearing will be deemed to have approved the Settlement and to have waived such objections and shall not be able to make any objections (by appeal or otherwise) to the Settlement.

The Parties also request that the Court schedule a Fairness Hearing) to establish the fairness of the Agreement and to order final approval. Set forth below the Courtmay set possible dates for issuance of notice, deadlines for objections and written response to objections (if any), the Fairness Hearing to determine final approval, and related orders and deadlines, assuming that the Court preliminarily approves the Agreement on July 21, 2024—approximately one month—after this filing; these dates are provided only as a possible schedule, subject to the Court's preferences and calendar:

| **Event/Deadline** | **Timeline** | **Date** |
|---|---|---|
| Preliminary Approval Granted | | |
| Notice period begins & continues for 60 days | | |
| Objection Deadline | | |
| Deadline for Joint Motion for Final Approval, Statements of Compliance, and Objection Responses | | |
| Fairness Hearing | | |

## IV. CONCLUSION

In light of the foregoing, the Parties jointly request that the Court certify the Settlement Class, order preliminary approval of the Agreement, set dates in the proposed form and method of the notice, and issue the proposed scheduling order, including scheduling a Fairness Hearing to determine final approval.

**FOR THE CLASS PLAINTIFFS:**

**GLANCY PRONGAY & MURRAY**
Lee Albert (LA-8307)
230 Park Avenue, Suite. 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lalbert@glancylaw.com

*/s/Lee Albert* Dated: June 21, 2024
Lee Albert, Esq.

**ERIK H. LANGELAND, P.C.**
Erik H. Langeland
733 Third Avenue, 16th Floor
New York, N.Y. 10017
Telephone: (212) 354-6270
elangeland@langelandlaw.com

**TOSTRUD LAW GROUP**
Jon A. Tostrud
Anthony M. Carter
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 278-2600
jtostrud@tostrudlaw.com
acarter@tostrudlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2024, I caused the foregoing to be filed electronically with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties.

Respectfully submitted,

*/s/ Lee Albert*
Lee Albert